IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

STEPHANIE DEES AND RICHARD
GEORGE DEES, INDIVIDUALLY, AND ON
BEHALF OF ALL WRONGFUL DEATH
BENEFICIARIES OF JEFFERY R. DEES,
DECEASED                                                              PLAINTIFFS

V.                                              CIVIL ACTION NO. 3:08cv265-HTW-LRA

AMERICAN MEDICAL RESPONSE, INC.                                       DEFENDANT

### ORDER GRANTING SUMMARY JUDGMENT

Having reviewed the relevant pleadings and briefs and having heard oral argument on pending motions in this action on September 23, 2009, this court now makes Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52 regarding (1) the Motion for Summary Judgment of American Medical Response, Inc. ("AMR") [docket no. 68], (2) AMR's Motion to Strike Dr. Gaymes' Affidavit [docket no. 73], (3) Plaintiffs' Motions for Joinder [docket no.s 10, 62], and (4) Planitiffs' Motion to Strike Defendant's Response to the Motion for Joinder [docket no. 19] as follows:

#### I. Findings of Fact

On the night of December 17, 2006, Jeffery Dees collapsed and stopped breathing after wrestling with one of his brothers at the Dees' home located outside of Raymond, Mississippi. Jeffery was 14 years old and suffered from the cardiac condition hypertrophic cardiomyopathy.

1

At 10:07 p.m. Jeffery's brother, Daniel, dialed 911 to request an ambulance for Jeffery. AMR received that 911 call and made the decision to "stage" its responding ambulance, Ambulance 124, instead of proceeding directly to the Dees home.[1]

AMR requested assistance from the Hinds County Sheriff's Department in securing what AMR believed to be a potentially dangerous scene at the Dees home, and the Hinds County Sheriff's Department dispatched deputies to the Dees' home.

Jeffery's father and a neighbor were performing CPR when AMR's Ambulance 124 arrived at the Dees' home at 10:28 p.m. Jeffery had no pulse, was not breathing, and was in cardiac arrest. AMR transported Jeffery to Central Mississippi Medical Center, where Jeffery was pronounced dead at 11:26 p.m. An autopsy confirmed that the cause of Jeffery's death was "fatal arrhythmia due to hypertrophic cardiomyopathy."

Plaintiffs filed this wrongful death action against AMR on March 20, 2008, alleging that AMR had caused Jeffery's death by failing to respond timely to the subject 911 call.

## II. Conclusions of Law

**A.    AMR's Motion for Summary Judgment and AMR's Motion to Strike Dr. Gaymes' Affidavit.**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] "Staging" refers to a procedure in the field of emergency medical services in which the responding ambulance travels to a location near the scene and waits or "stages" until the scene has been secured by law enforcement.

To survive summary judgment in this case plaintiffs are required to present expert proof of proximate causation. *See Mariner Health Care, Inc. v. Edwards*, 964 So.2d 1138, ¶8 (Miss. 2007) ("In cases alleging that death was caused by the negligence of a health care provider, proximate cause must be established by a medical doctor.") (citing *Richardson v. Methodist Hosp. of Hattiesburg, Inc.*, 807 So.2d 1244, 1248 (Miss.2002)); *Patton v. Mobile Medic Ambulance Serv.*, No. 3:07-CV-653, 2009 WL 44206 (S.D. Miss. 2009) ("In Mississippi, expert testimony is required to establish a claim of medical negligence unless the matter at issue is within the common knowledge of laymen.") (quoting *Terry v. Clinton Health & Rehab Ctr.*, 170 F. Supp. 2d 686, 688 (S.D. Miss. 2000)).

On November 3, 2008, plaintiffs designated Dr. Charles Gaymes, Jeffery's treating cardiologist, as their causation expert. Attached to plaintiffs' expert designation was Dr. Gaymes' expert report, in which he offered the opinion,

> Based on scientific data of successful resuscitation and a good outcome, it is my professional opinion that Jeffery Dees **could** have survived this cardiac arrest if adequate advanced cardiac life support had been administered **within this seven minute period** and adequate resuscitation performed including use of a cardiac defibrillator.

(Emphasis added).[2]

AMR deposed Dr. Gaymes on December 3, 2008. Dr. Gaymes testified clearly and unequivocally that he could not state that but for AMR's alleged negligence, Jeffery would have had a greater than 50 percent chance of survival:

---

[2]With regard to Dr. Gaymes' reference to the need for advanced cardiac life support within seven minutes, the Court notes that plaintiffs have offered no evidence of how long it should have taken AMR to respond to the subject 911 call.

Q. [W]hat is the basis for any opinion that this child would have had - - based on reasonable medical probability - - a greater than 50 percent chance of survival if anything had happened differently?

A. I cannot say 50 percent. I cannot say 5 percent. All I can say is, given a sequence of events, within immediate to early, that the outcome could be different.

Q. If I understand you correctly, you are just saying the patient has a better chance of surviving if he can get very early ACLS treatment than later?

A. Yes, sir.

Q. But you can't say that the patient would to a degree of probability, that is greater than 50 percent probability, have survived regardless of what the treatment had been?

A. Right.

. . . .

Q. And so to sum up on your opinion, I understand your opinion that it's better if the patient can get ACLS as soon as possible, but as far as published studies are concerned or any basis on which to form an opinion, you don't have anything that states that if something different had been done for this patient, that the patient would have had a greater than 50 percent chance of survival, do you?

A. Right.

. . . .

Q. . . . You can't state with medical certainty, a reasonable degree of medical certainty, that if something different had been done for Jeffery Dees, he would have had a better than 50 percent chance of surviving this cardiac arrest, can you?

A. No, sir.

4

Under Mississippi law, plaintiffs are required to offer evidence that but for AMR's alleged negligence Jeffery would have had a greater than 50 percent chance of survival. *See Hubbard v. Wansley*, 954 So. 2d 951, 964 (Miss. 2007) (". . . [A] plaintiff [must] show that 'proper treatment would have provided the patient with a greater than fifty (50) percent chance of a better result than was in fact obtained.'") (quoting *Ladner v. Campbell*, 515 So.2d 882, 888-89 (Miss. 1987)); *Patton v. Mobile Medic Ambulance Serv., Inc. d/b/a American Medical Response, Inc.*, 2009 WL 44206, *4 (S.D. Miss. 2009) (same) (quoting *Hubbard*, 954 So. 2d at 964).

On February 6, 2009, AMR moved for summary judgment based upon the fact that plaintiffs had not met the "greater than 50 percent" standard of causation. In response to AMR's Motion for Summary Judgment Plaintiffs produced a new affidavit from Dr. Gaymes, signed on March 12, 2009, in which he offered the opinion,

> Based on scientific data of successful resuscitation and a good out come (sic), it is my professional opinion within a reasonable degree of medical probability that Jeffery Dees **would** have survived the cardiac arrest if adequate advanced cardiac life support had been administered after the cardiac arrest and if adequate resuscitation had been performed, including the use of a cardiac defibrillator.

(Emphasis added).

AMR moved to strike Dr. Gaymes' March 12, 2009 affidavit on the grounds that it contradicts his prior deposition testimony. Plaintiffs responded that (1) Dr. Gaymes' affidavit merely clarifies, but does not contradict, his prior testimony; and (2) Dr. Gaymes' affidavit should not be stricken because he is a non-party witness.

5

With regard to plaintiffs' first argument, the Court finds that Dr. Gaymes' affidavit clearly contradicts his prior expert report and deposition testimony, and plaintiffs have provided no explanation for the contradiction.

With regard to plaintiffs' second argument, the Court finds that the law is clear that a party cannot defeat a motion for summary judgment by submitting an expert's affidavit which contradicts the expert's prior deposition testimony. See *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.")

Plaintiffs' contention that the "sham affidavit" rule does not apply to non-party witnesses is unconvincing. "The Fifth Circuit has long held that a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment by offering affidavit testimony that contradicts, without explanation, his or her prior sworn testimony." *United States ex rel. Gudur v. Deloitte Consulting Llp*, 512 F. Supp. 2d 920, 942 (S.D. Tex. 2007) (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n.23 (5th Cir.), *cert. denied*, 506 U.S. 845, 113 S. Ct. 136, 121 L. Ed. 2d 89 (1992)). Plaintiffs have failed to cite any authority in support of this contention, and the Court notes that the Fourth, Seventh, Eighth and Tenth Circuits have all rejected the argument. *See Rohrbough v. Wyeth Labs., Inc.*, 916 F. 2d 970, 975 (4th Cir. 1990); *Adelman-Tremblay v. Jewel Cos., Inc.*, 859 F.2d 517, 520 (7th Cir. 1988); *Garnac Grain Co. v. Blackley*, 932 F.2d 1563, 1568 (8th Cir. 1991); *Ralston v. Smith & Nephew Richards, Inc.*, 275 F. 3d 965, 971-74 (10th Cir. 2001).

Therefore, the Court finds that the affidavit of Dr. Gaymes should be stricken. The Court further finds that plaintiffs' remaining causation evidence is insufficient to survive summary judgment. Plaintiffs are left with no evidence that but for AMR's alleged negligence Jeffery Dees would have had a greater than 50 percent chance of survival. Accordingly, the Court enters summary judgment in favor of AMR.[3]

**B.   Plaintiffs' Motion for Joinder of Hinds County Defendants.**

Plaintiffs moved to join the Hinds County Sheriff's Department and the Hinds County 911 service as defendants in this case, arguing that the Hinds County entities failed to timely notify AMR that the scene was secure and failed to request assistance from the Raymond Volunteer Fire Department. The court finds that plaintiffs' motion is moot in light of the Court's ruling on AMR's Motion for Summary Judgment.

### III. Conclusion

For these reasons, AMR's Motion for Summary Judgment [docket no. 68] is granted, and AMR's Motion to Strike Dr. Gaymes' affidavit [docket no.73] is granted. Plaintiffs' Motions for Joinder of the Hinds County Defendants [docket no.s 10, 62] and

---

[3]The Court notes that AMR's Motion for Summary Judgment also argues that plaintiffs lack the necessary proof of a breach of the standard of care. It is not necessary for the Court to address this argument because plaintiffs clearly lack the necessary causation evidence to survive summary judgment.

Motion to Strike Defendant's Response in Opposition to Plaintiff's Motion for Joinder [docket no. 19] are denied as moot.

SO ORDERED AND ADJUDGED, this the 16th day of February, 2010.

**s/ HENRY T. WINGATE**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

Civil Action No. 3:08cv0265 HTW-LRA
Order Granting Summary Judgment